BAYLISS v. DAVIS.

1. **Principal and Agent**: CONDITIONAL SALE: CONTRACT. A contract between B. and S. stipulated that B. should appoint S. his agent for the sale of harvesters, for which S. was to pay one-third in cash on delivery and give his notes for the balance; as he made sales he was to deduct the amount of cash advanced by him from the cash proceeds and have the notes received by him made in the name of B., his own notes being taken up as he transmitted those of the parties to whom he sold: *Held*, that the relation between B. and S. was that of principal and agent and that the transactions between them were not conditional sales.

2. ——: ——: ——. Upon the recovery of certain machines from a party to whom S. had fraudulently sold them, he would be entitled to a credit upon his note to B. of the value of the machines so recovered.

3. **Verdict**: ANSWERS TO INTERROGATORIES. Where the jury answered certain interrogatories submitted to them and accompanied their verdict with a communication to the judge stating that the evidence hardly warranted definite answers to the interrogatories, the court properly treated the communication as no part of the verdict.

*Appeal from Linn District Court.*

MONDAY, DECEMBER 10.

THIS is an action for the recovery of five Massillon harvesters. The plaintiff claimed that he was the absolute owner of the harvesters, and that they were in the possession of one Stinson, plaintiff's agent, for the purpose of sale; that the defendant had knowledge of the contract of agency existing between plaintiff and Stinson, and that Stinson was insolvent and intended to defraud his creditors, and, with this knowledge, de-

fendant pretended to purchase said harvesters of Stinson in violation of said contract of agency. A copy of the contract was attached to the petition.

The answer of the defendant admits the purchase of the harvesters from Stinson, and avers that said purchase was made in good faith, for a valuable consideration and without any fraud. It is also admitted that at the time of the sale the defendant knew of the written contract between the plaintiff and Stinson, by which the possession of said property was delivered to Stinson, but it is claimed that Stinson had full authority to sell the same, and had paid the plaintiff a large part of the purchase money therefor before the execution of said contract, and that afterwards, and before defendant's purchase, the plaintiff made an absolute sale of said harvesters to Stinson. There was a trial by jury, a verdict was found for the plaintiff and a judgment rendered thereon. Defendant appeals.

*J. B. Young*, for appellant.

*Jas. D. Giffin*, for appellee.

ROTHROCK, J.—I. The principal question submitted for our determination involves a construction of the contract between the plaintiff and Stinson. It is claimed by the plaintiff that he retained the title to the property in controversy, and that Stinson was merely his agent for the sale thereof. The defendant claims that when the possession of the property passed to Stinson the title also passed.

1. PRINCIPAL and agent: conditional sale: contract.

The contract in question, instead of being a brief and clear statement of the agreement of the parties, as all such instruments ought to be, is as voluminous as an insurance policy and is full of obscure and indefinite statements. It is not practicable to incorporate it in this opinion. It would occupy about five pages of our reports. It is dated on the 17th day of February, 1875. It states that Bayliss, the plaintiff herein, appoints Stinson an agent for the harvesters for the season of 1875, and agrees to allow him a commission of forty dollars

on each harvester sold. All notes taken for machines sold by Stinson were to be made payable to the order of Bayliss. If any machines remained unsold at the end of the season Stinson was to hold them over free of charge but subject to the order of Bayliss, and if not ordered away Stinson was to give Bayliss a satisfactory note therefor, with ten per cent interest, payable in one year from the time of settlement. Stinson was to receive and take good care of all machines sent him, and have them properly stored under cover and neither use them nor permit them to be used. The sales were to be made by Stinson on the following terms: One-third cash, one-third November 1st, 1875, and one-third November 1st, 1876. Inserted in said contract is an order by Stinson for fifteen harvesters on the terms and conditions of the contract, and he agrees to advance to Bayliss eight hundred dollars "to apply to the proceeds." Six hundred dollars of this amount had been already paid, and he was to give his notes for the balance upon the receipt of the harvesters. It was further agreed that Stinson would give notes payable September 1st, 1875, "for the balance of the proceeds" after deducting the eight hundred dollars to be advanced. Stinson was to remit proceeds of sales as fast as received, "after deducting advances specified in this contract." And the notes to be given by him were to be taken up by exchanging "therefor farmers' notes taken for said machines."

The foregoing is the substance of the material parts of the contract. It will be readily seen that it is a contract creating an agency and not a contract of sale. The advance of money by Stinson and giving notes for the machines, ordinarily, without explanation, would indicate a sale, but when considered in connection with the fact that he was to be repaid the advances from the cash payments made by farmers to whom he might sell machines, and that his notes were to be taken up and paid by the notes taken of the farmers, this part is not inconsistent with the agency which is set out in other parts of the contract.

We do not think that the bill of the machines sent by Bayliss to Stinson made any change in the contract, or made it other or different from what it was when signed by the parties.

It fixes the terms " as per contract;" evidently referring to the written contract.

Counsel for appellant urges that Stinson paid three-fourths of the purchase money, and executed to the plaintiff his promissory note for the balance, and thus paid the entire consideration, and that this indicates a sale.

What was shown upon the trial we cannot determine, as the evidence is not contained in the record before us. The contract shows that Stinson ordered fifteen machines, and that he was to sell them so they would net the plaintiff $2,400. He made an advance in money and a note to the amount of eight hundred dollars, or one-third, and agreed to give notes for the balance, which would be $1,600. Suppose he did give these notes; they are entirely consistent with the contract as a contract of agency. He was required to sell for one-third cash in hand and take his advances out of the first payment; he was to take farmers' notes for the two-thirds, payable to plain·tiff, and with them he was to extinguish his notes given for that part which was not advances.

II. It is next urged by counsel for appellant that plaintiff has no right to recover the machines of Stinson or the defend2. ——: ——: ant, who claims title under Stinson, without first ——. offering to return the promissory note given by Stinson to plaintiff.

Whatever application the rule contended for may have in cases of conditional sales, we are clear that it cannot obtain in favor of an agent who fraudulently disposes of the property of his principal. Of course no action will lie upon the note against Stinson for the machines recovered in this action. The judgment against the defendant in this action entitles Stinson to a credit on his notes the same as though he had sold the machines to farmers and sent their notes to plaintiff to be credited.

III. Lastly, it is claimed the general verdict is inconsistent with and unsupported by the special verdict. The general 3. VERDICT: verdict is in these words: "We, the jury, find for answers to interrogatories. the plaintiff and assess the value of the property

at six hundred dollars, and also assess the damages at thirty dollars.

In answer to certain special interrogatories, submitted at the instance of the defendant, the jury responded as follows:

"1.   Did defendant at the time of his purchase of the harvesters in controversy know that Stinson was indebted therefor?

"Ans.   Yes.

"2,   Did defendant at the time of such purchase have any knowledge that Stinson intended to defraud the plaintiff?

"Ans.   Yes."

At the same time at which the verdict was returned the jury gave to the presiding judge a communication upon a separate piece of paper, which is as follows:

"*To the Court:*—We, the jury, respectfully state to your Honor that the first and second interrogatories requiring positive answers were of such a nature that the evidence in the case would hardly warrant definite answers to the same, either in the affirmative or negative.   We hope this modification of our answers to interrogatories will be accepted by your Honor.

A. Snyder, Foreman."

There is no inconsistency between the answers to the interrogatories and the general verdict.   The only question is, are the answers to be taken as the response of the jury to the interrogatories?   They answer the questions in the affirmative, and say to the judge in a separate paper "that the evidence in the case would hardly warrant us in giving definite answers to the same either in the affirmative or negative."   It must be meant by this that the question was nearly in even balance in their minds, but the answers show that they concluded to answer in the affirmative.

The record does not show that any action was taken by the court upon the communication returned with the verdict.   We cannot regard it as part of the verdict; it is merely explanatory of the state of the jurors' minds upon these interrogatories.   It is to be presumed the court followed section 2803 of the Code, and that upon the reading of the verdict to

the jury, and the inquiry being made as to whether it was their verdict, there was no disagreement thereto.

Believing, as we do, that there is no error in the record before us, the judgment of the court below must be

AFFIRMED.