**UNION TRUST & SAVINGS BANK,**
**Fort Dodge, Iowa, Appellant,**

v.

**The STATE BANK, Fort Dodge, Iowa, Conservator of Bonnie Semprini, Appellee.**

No. 53391.

Supreme Court of Iowa.

Sept. 16, 1969.

---

Johnson, Burnquist & Erb, Fort Dodge, for appellant.

Alan Loth, Fort Dodge, for appellee.

MOORE, Justice.

This is an action tried at law on plaintiff's claim filed against the conservator of Bonnie Semprini on a guaranty agreement. The trial court found her husband's notes did not come within the terms of the guaranty agreement and entered judgment for defendant. Plaintiff has appealed. For clarity we shall hereafter refer to Mrs. Semprini as defendant.

Defendant's answer alleged she was mentally incompetent on November 2, 1966 when she signed the guaranty agreement, she had been subjected to undue influence by officers of plaintiff bank and none of the notes signed by her husband were within the terms of the guaranty as written.

The trial court submitted to the jury the question of defendant's competency and her claim of undue influence. Answers to special interrogatories were against defendant on these contentions and a $85,000 verdict was returned for plaintiff. Thereafter the trial court sustained defendant's motion for a directed verdict, on which ruling had been withheld at the close of the evidence.

The court found "the notes sued upon did not come within the terms of the guaranty agreement; that the guaranty agreement is unambiguous and the agreement must be strictly construed."

I. The first paragraph of the record as prepared by plaintiff-appellant and approved by defendant-appellee and the trial court states: "Pursuant to RULE 340-b, Plaintiff-Appellant states that the sole error to be assigned on this appeal is the trial Court's Ruling that 'the notes sued on did not come within the terms of the guaranty agreement', and sustaining Defendant's motion for judgment notwithstanding the verdict and entering such judgment. Accordingly, this Record includes only so much of the proceedings below as relates to this question, and the appeal will be limited thereto."

Plaintiff's brief sets out three "propositions relied on for reversal" rather than a statement of errors as required by rule 344(a) (3), Rules of Civil Procedure. The assignments are general and not in the form required by rule 344 (a) (4), R.C.P. but when read with the statement of error set out in the record are sufficient to raise the question of whether the trial court erred in sustaining the directed verdict as reasserted in defendant's motion for judgment notwithstanding verdict. Defendant's brief fully covers this question. We recommend more careful compliance with the rules.

Plaintiff in its reply brief for the first time asserts the trial court erred in

excluding certain offered parol evidence. We decline to consider this contention. It was not assigned in plaintiff-appellant's opening brief as required by rule 344(a)(4), R.C.P. and is barred under rule 340(b), R.C.P. which provides " * * * it (the abstract of record) shall include a concise statement of all points upon which appellant will rely on the appeal, which shall be limited thereto."

II. The evidence relevant to the question presented on this appeal is undisputed. Bonnie Semprini, daughter of a wealthy Fort Dodge manufacturer, has muscular dystrophy, is completely helpless from her neck down and was constantly attended by a practical nurse who had to hold and guide her hand when she wrote. Her physical condition was otherwise good and mentally she was sometimes very lucid and at other times had lapses. She could understand people although she could not talk. With considerable effort she could answer "yes" or "no".

Her husband, James Semprini, had for several years engaged in private business ventures in which she had no financial interest. As capital was required he borrowed from plaintiff bank conditioned on the giving of a guaranty from his wife for which representatives of the bank called at Mrs. Semprini's house and procured her signature.

Before December 8, 1964 she had signed a guaranty for $37,500. It was torn up on February 11, 1966 when she executed a new one for $77,500. These guaranties were on the same form as exhibit 2 which is the subject of this action. All were prepared by the bank.

Exhibit 2 was signed on November 2, 1966 when Mr. Rowles and Mr. Garatoni of plaintiff bank visited defendant's home. Mr. Garatoni testified, "I asked her: 'How are you?'; and 'Do you know why I am here and the amount you are to sign for?'; and she indicated she did. Mrs. Gibson

had to hold her hand and guide it along as her name was written."

Mrs. Semprini was able, after a struggle, to say "yes" in answer to leading questions propounded at the trial. By this process her testimony was that she remembered $50,000 as the amount of the guaranty and "wanted to help her husband" and "thought I was helping Jimmy get money from the bank."

The guaranty agreement, exhibit 2, provides:

"LOAN GUARANTY AGREEMENT—UNION TRUST & SAVINGS BANK,

"Fort Dodge, Iowa. Date Nov. 2, 1966.

"For and in consideration of the sum of One Dollar and other good and valuable considerations, to me in hand paid by _____ the receipt whereof. is hereby acknowledged, I hereby guarantee to said Bank, its successor, successors, or assigns, payment at maturity of the bills, notes, checks, drafts, or other evidence of debt, not exceeding the sum of $85,000.00 either made or endorsed by James Semprini already discounted or which may hereafter be discounted by said Bank for the said _____ together with all legal or other expenses of or for collection; demand of payment and notice of protest waived.

"And I hereby declare this guaranty to be a continuing guaranty of the payment of such bills, notes, checks, drafts or other evidences of debt, up to said sum of $85,000.00, either made or endorsed by said James Semprini, until revoked by me in writing and a copy of such revocation delivered to said Bank.

"/s/ Bonnie Semprini

"In Presence of: /s/ Grace Gibson
                /s/ Peter Garatoni"

After its execution plaintiff bank made funds up to $85,000 available to Mr. Semprini. As funds were delivered to him Mr. Semprini executed and delivered notes to

plaintiff February 7, 1969, $30,000; March 2, 1967, $20,000; March 23, 1967, $20,000; April 8, 1967, $12,500; May 5, 1967, $2500. All but one were renewals of previous notes. When he renewed a note, the old one was surrendered to him. He paid the interest to maturity and gave a new note. No interest was taken in advance. This action followed nonpayment of the five notes. No contention is made that defendant knew the nature of her husband's dealings with plaintiff or that she received any proceeds therefrom.

Plaintiff contends proper construction of the guaranty agreement requires a holding the five unpaid notes are within defendant's guaranty. Defendant's argument, with which the trial court agreed, is the notes were not "discounted" instruments and that only "such" bills, notes, checks, drafts, or other evidence of debt up to $85,000 are covered under the agreement.

III. Thus we are faced with interpretation of the guaranty agreement. The objective is to ascertain the meaning and intention of the parties as expressed in the language used. Small v. Ogden, 259 Iowa 1126, 1129, 147 N.W.2d 18, 20; Bruhl v. Thul, 257 Iowa 889, 892, 134 N.W.2d 571, 573, and citations.

■ Where, as here, there is no conflict in the evidence and the terms of the agreement are admitted, the intent becomes a question of law for the court. Rotterman v. General Mills, Inc., 245 Iowa 229, 233, 61 N.W.2d 718, 720, and citations.

It is the court's duty to give effect to the language in accordance with its plain and ordinary meaning and not make a new contract for the parties by arbitrary judicial construction. Small v. Ogden, supra; B–W Acceptance Corp. v. Saluri, 258 Iowa 489, 495, 139 N.W.2d 399, 403; Bruhl v. Thul, supra.

In two recent cases we held that for the purpose of discovering the intention of both parties to a contract extrinsic evidence is admissible which throws light on the situation of the parties, the antecedent negotiations, the attending circumstances and the objects they were thereby striving to attain. Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying, enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. See Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 168–172; Janssen v. North Iowa Conf. Pen., Inc., Iowa, 166 N.W.2d 901, 904, 905.

■ Such evidence was submitted in the case at bar but gives little aid as it shows only defendant, with the thought of helping her husband get money at the bank, signed the guaranty agreement prepared and submitted by the bank without any discussion of its terms. We must therefore ascertain the meaning and intention of the parties expressed in the language used.

IV. Webster's Third New International Dictionary defines "dis-count" as "an abatement or reduction made from the gross amount or value of anything * * * a deduction made for interest in advancing money upon or purchasing a bill or note not due."

The American Heritage Dictionary defines "discount" as: "to deduct or subtract (a specified sum or percentage) from a cost or price * * * To advance money as a loan on (a commercial paper not immediately payable) after deducting the interest."

For like definitions see 12A Words and Phrases, pages 290–293; 26A C.J.S., pages 973, 974; Black's Law Dictionary, Revised Fourth Edition, pages 551, 552.

In making a loan a bank "discounts" it by withholding the interest to maturity when the loan is made. Meserole Securities Co. v. Cosman, 253 N.Y. 130, 170 N.E. 519, 521; Valley Mortg. Co., v. Patterson, 30 Ala.App. 492, 8 So.2d 213, 214; Anderson v. Cleburne Building & Loan Ass'n, 4 Willson, Civ.Cas.Ct.App. 174, 16 S.W. 298, 300; Davis v. Boone County Deposit Bank, Ky., 80 S.W. 161, 162; Utica City Nat. Bank v. Gunn, 222 N.Y.

204, 118 N.E. 607, 608; Bramblette v. Deposit Bank, Ky., 79 S.W. 193, 194; Bomar v. Wynn, Tex.Civ.App., 164 S.W. 1038, 1040; Bank of McLain v. Pascagoula Nat. Bank, 150 Miss. 738, 117 So. 124, 126; Niagara County Bank v. Baker, 15 Ohio St. 68, 85–87.

 Here the notes were given by Mr. Semprini for direct loans without the bank withholding any interest therefrom. Without a drawback being made it cannot be said the bank had discounted them.

We agree with the trial court's conclusion the notes sued upon did not come within the terms of the guaranty agreement. It is limited to "such" notes or other evidences of debt as are "discounted".

The judgment entered by the trial court is

Affirmed.

All Justices concur.