**Morgan Ira HEISTER, Judith Ann Heister, Debtors.**

**Gene Brown, Plaintiff.**

v.

**Morgan Ira Heister, Defendant.**

**Bankruptcy No. 01–03094.**
**Adversary No. 01–9244.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 27, 2003.

Jeffrey P. Taylor, Cedar Rapids, IA, for Debtors.

## ORDER RE: COMPLAINT TO DETERMINE DISCHARGE OF DEBT

PAUL J. KILBURG, Chief Judge.

The above captioned matter came on for trial on January 21, 2003 on Plaintiff's Complaint to Determine Dischargeability of Debt. Plaintiff Gene Brown appeared with Attorney David Nadler. Defendant/Debtor Morgan Ira Heister, d/b/a Heister's Used Tractors, appeared with Attorney Jeffrey Taylor. After presentation of evidence, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff Gene Brown filed this Complaint to Determine Dischargeability of Debt on December 11, 2001. He seeks to except a debt from discharge under § 523(a)(4) based on fraud in a fiduciary capacity, embezzlement or larceny. Alternatively, he seeks denial of discharge under § 523(a)(6) based on willful and malicious injury by the debtor to another entity.

### FINDINGS OF FACT

Plaintiff's claim arises out of a course of dealings between the parties beginning in 1992. Plaintiff is a retired farmer residing in Champlain, Minnesota. Around 1985 or 1986, Plaintiff began purchasing antique tractors as a hobby. Debtor is engaged in the business of purchasing, repairing, and selling antique tractors. Debtor primarily conducts his business at his shop in Waubeek, Iowa.

Plaintiff and Debtor met at a farm sale in Sigourney, Iowa in 1992. Plaintiff initially sold a few tractors to Debtor on a cash basis. When Debtor could no longer pay for the tractors at the time of sale. Plaintiff allowed Debtor to take tractors to

his shop in Waubeek to repair and sell them. Plaintiff would set the price for the tractor. Debtor could keep any amount he received over Plaintiff's designated sale price.

This arrangement continued amicably until Plaintiff became concerned about the tractors remaining in Debtor's possession. On April 10, 1998, at Plaintiff's request, Debtor sent Plaintiff a handwritten list of the fourteen tractors in his possession. This document is the only writing memorializing the parties' relationship. Plaintiff alleges that he never received payment for any of the fourteen tractors. Debtor only acknowledges withholding payment on four of the fourteen tractors. Debtor testified that, due to his financial trouble, he was "robbing Peter to pay Paul" but he denies any wrongful intent relating to Plaintiff.

Plaintiff testified that two years later, in 2000, Plaintiff told Debtor of his desire to reclaim one of the tractors, a "Super–H." The parties agreed to meet at Debtor's residence on September 6, 2000. Plaintiff traveled to Debtor's residence on that day but was not able to locate Debtor or the Super–H. Debtor later told Plaintiff that something came up and that he had to leave his residence. Debtor testified that he put money into the tractor. Debtor testified that Plaintiff either did not show up or that he missed him. Debtor later testified that Plaintiff was not coming to collect the tractor on that day, only that Plaintiff was going to "be there." Debtor's Exhibit "B" shows that he sold the Super–H in 1998, two years before the agreed meeting.

According to Plaintiff, he continued to attempt to make appointments with Debtor to pick up the tractor. Plaintiff testified that Debtor repeatedly told him that he would not be available. Plaintiff testified that on one of the days that Debtor claimed to be unavailable, Plaintiff was able to contact Debtor at his residence. Debtor denies any further contact between the parties.

Plaintiff testified that it was then that relations soured between the parties. Plaintiff testified that, during this time, he phoned Debtor and asked him if he had his tractors. Plaintiff testified that Debtor uttered an obscene expletive and abruptly terminated the conversation.

Plaintiff claims that the parties spoke once more, in late 2000. Plaintiff demanded the money or the tractors, while Debtor wanted to send Plaintiff a statement for the amount owed. Plaintiff testified that communication ended at this time. Plaintiff speculated at trial that Debtor wanted to send Plaintiff a statement as he was about to file bankruptcy and would try to get the debt discharged. Debtor listed Plaintiff as a creditor on his bankruptcy schedules with a claim in the amount of $15,000. This amount coincides with Plaintiff's valuation of the fourteen tractors in Debtor's possession in April, 1998.

Debtor claims that Plaintiff owes him trucking expenses in the amount of $4,566.00. Debtor billed Plaintiff on December 8, 2001, three months after he filed for bankruptcy. Debtor did not list this bill as "accounts receivable" in his bankruptcy petition. Plaintiff testified that Debtor was paid for hauling upon completion of each hauling service. Plaintiff alleges that the parties never had a formal agreement for trucking charges and denies that he would have paid the rate of over two dollars/mile reflected in Debtor's trucking bill. According to Plaintiff, the two parties joked about Debtor getting "free gas," as Debtor would have been going to Plaintiff's residence to pick up tractors anyway.

## APPLICABLE LAW

To resolve Plaintiff's claims under § 523(a)(4) and (a)(6), it is necessary to

interpret the parties' contract, if any, and their conduct under it. Plaintiff is a resident of Minnesota. Debtor is an Iowa resident. If foreign law is not plead or proven, the law of the forum applies. *In re Hupton,* 287 B.R. 438, 439 (Bankr. N.D.Iowa 2002). Plaintiff did not plead the applicability of Minnesota law. Therefore, Iowa law, to the extent appropriate, determines the nature of the parties' relationship. *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (stating the basic rule that state law governs the substance of the claim).

## CONTRACT ANALYSIS

■ The existence of an oral contract, as well as its terms and whether it was breached, are questions for the trier of fact. *Dallenbach v. Mapco Gas Prod., Inc.,* 459 N.W.2d 483, 486 (Iowa 1990). To prove the existence of an oral contract, the terms must be sufficiently definite for a court to determine with certainty the duties of each party, the conditions relative to performance, and a reasonably certain basis for a remedy. *Gallagher, Langlas & Gallagher v. Burco,* 587 N.W.2d 615, 617 (Iowa Ct.App.1998). Where a contract appears to exist, courts are reluctant to find it too uncertain to be enforceable. *Audus v. Sabre Communications Corp.,* 554 N.W.2d 868, 872 (Iowa 1996).

■ Under Iowa law, an oral contract for goods is enforceable unless a party denies its existence. Iowa Code § 554.2201. *Meylor v. Brown,* 281 N.W.2d 632, 634 (Iowa 1979)(stating that "[i]f a defendant admits that an oral contract was made, then under § 622.35 or under § 554.2201(3)(b) the contract is as good and enforceable as if scribed on parchment"). Here, the parties agree that Plaintiff set a price and that Debtor was to retain the proceeds above the sale price.

What the parties do not agree upon is the nature of the relationship underlying these terms.

## NATURE OF RELATIONSHIP

■ The perils of oral contracts are well known. As Justice Cardozo observed, "[t]he peril of perjury and error is latent in the spoken promise." *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273, 274 (1922). Here, no written contract was enlisted and record-keeping was minimal while thousands of dollars worth of property changed hands. Plaintiff claims that the oral contract was a consignment. Debtor claims that he purchased the tractors.

■ The fundamental issue is to determine the locus of title. *In re Nichols Wire, Sheet, & Hardware Co.,* 66 F.2d 950, 953 (8th Cir.1933). If the contract constitutes a sale, Plaintiff is Debtor's creditor, but if the contract was one of consignment or bailment, then Debtor was Plaintiff's agent, as title never passed. *Id.* Stated another way, if the owner retains the right to demand return of the property, the transaction is one of bailment or agency. *Rotterman v. General Mills, Inc.,* 245 Iowa 229, 61 N.W.2d 718, 720 (1953).

Even though Debtor did not pay for the tractors in question at the time he took possession, this does not necessarily negate a sale. Traditionally, such a transaction was defined as a conditional sale. A conditional sale requires a binding promise on the part of the consignee to pay for the goods, though not necessarily at present. *Industrial Credit Co. v. Hargadon Equip. Co.,* 254 Iowa 757, 119 N.W.2d 238, 242 (1963); *see also Rotterman v. General Mills, Inc.,* 245 Iowa 229, 61 N.W.2d 718, 721 (1953) (citing *Norwegian Plow Co. v. Clark,* 102 Iowa 31, 70 N.W. 808, 810 (1897)). Other than the matter of payment, a conditional sale transaction is iden-

tical to an absolute sale. *Hansen v. Kuhn,* 226 Iowa 794, 285 N.W. 249, 252 (1939).

Article Two of the Uniform Commercial Code has liberalized the standard for formation of a contract for the sale of goods. *See* U.C.C. §§ 2–204, 2–206; Iowa Code §§ 554.2204, .2206; *Flanagan v. Consol. Nutrition, L.C.,* 627 N.W.2d 573, 578 (Iowa App.2001); *see also In re Victoria Alloys, Inc.,* 261 B.R. 424, 430 (Bankr.N.D.Ohio 2001). The term "goods" includes "all things ... which are movable at the time of identification to the contract for sale other than the money which is to be paid, investment securities ... and things in action." *Flanagan,* 627 N.W.2d at 578; Iowa Code § 554.2105. The tractors are goods as defined by the U.C.C.

Article 2 does not eliminate the common law of contracts. *Flanagan,* 627 N.W.2d at 578. At common law, the parties must reach an agreement in order to have an enforceable contract. *Id.*

The burden is upon Plaintiff to establish the requisite elements of its case, including the nature of the parties' relationship. It is clear that, in the beginning, all sales were absolute with payment made at the time of sale. Later, Debtor began to add improvements to the tractors which were then sold for an enhanced value. The record is devoid of any evidence that the initial contact establishing absolute sales was modified when Plaintiff allowed Debtor to pay at a later time when the tractors were sold. At the time of this change, the parties were enjoying a good relationship and there is no evidence to suggest they changed the fundamental nature of their contract.

This Court concludes that the parties entered into a contract for the sale of tractors with each party knowing their duties and neither party disputing the terms of the agreement. Although no money changed hands contemporaneously with the tractors, this Court finds that the relationship constituted an oral contract for a conditional sale with title passing at the time of physical transfer of the tractors.

## PLAINTIFF'S NONDISCHARGE-ABILITY CLAIMS UNDER 11 U.S.C. § 523(a)(4)

■ Plaintiff's complaint alleges that Debtor committed either fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny when he converted the tractors owned by Plaintiff to his own use. Plaintiff's cause of action arises under 11 U.S.C. § 523(a)(4), which provides:

(a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

As the primary goal of the Bankruptcy Code is to provide debtors with a "fresh start," exceptions to discharge are generally construed narrowly. *In re Kline,* 65 F.3d 749, 751 (8th Cir.1995). In order to except a debt from discharge under § 523(a), Plaintiff must prove the elements of the claim by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## SECTION 523(a)(4): FIDUCIARY CAPACITY

■ To prevent the discharge of a debt for fraud or defalcation while acting as a fiduciary under § 523(a)(4), it is incumbent upon Plaintiff to establish the following two elements: (1) a fiduciary relationship existed between Debtor and Plaintiff; and (2) Debtor committed fraud or defalcation in the course of that fiduciary relationship.

*In re Montgomery,* 236 B.R. 914, 922 (Bankr.D.N.D.1999).

■■■■■ With regard to the first element, whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. *In re Cochrane,* 124 F.3d 978, 984 (8th Cir. 1997). The fiduciary relationship must be one arising from an express or technical trust. *In re Long,* 774 F.2d 875, 878 (8th Cir.1985). It does not encompass ordinary commercial relationships such as debtor-creditor or principal-agent. *In re Dove,* 78 B.R. 630, 633 (Bankr.M.D.Ga.1986). A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship. *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993).

■■■■■ Bankruptcy courts regularly look to state law to determine whether a fiduciary capacity exists. *Long,* 774 F.2d at 878; *In re Kondora,* 194 B.R. 202, 208 (Bankr.N.D.Iowa 1996). "The 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *In re Cook,* 263 B.R. 249, 255 (Bankr. N.D.Iowa 2001). State law is therefore important in determining whether a party has acted in a fiduciary capacity. *Id.*

■■■■■ Under Iowa law, a trust has been defined as "a fiduciary relation with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as the result of a manifestation of intention to create it." *State v. Caslavka,* 531 N.W.2d 102, 105 (Iowa 1995). This definition of trust imposes a requirement that there be "some objective manifestation of an intention to create the relationship as defined in the quoted definition." *Id.* A fiduciary

relationship cannot be assumed without an objective manifestation of intent to create it. *Id.* One indicia of a trust relationship is the requirement of a separate bank account for the receipt and holding of trust funds. *In re Pehkonen,* 15 B.R. 577, 581 (Bankr.N.D.Iowa 1981). Plaintiff offered no evidence that could be construed to establish a trust relationship. Debtor never assured Plaintiff that the profits from the sales of the tractors would be held in trust. No separate account was established.

Ultimately, the question of a fiduciary relationship is a question of federal law. *Cochrane,* 124 F.3d at 984. Trusts implied by law or contract do not create fiduciary relationships. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Guy,* 101 B.R. 961, 983 (Bankr.N.D.Ind.1988). The term "fiduciary" as used in § 523(a)(4) is restricted to:

> the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners.

*In re Zeitler,* 213 B.R. 457, 461 (Bankr. E.D.N.C.1997); *In re McKnew,* 270 B.R. 593, 625 (Bankr.E.D.Va.2001). This Court finds that Debtor purchased the tractors from Plaintiff in an ordinary business transaction. Debtor did not have a fiduciary duty to Plaintiff. As such, Debtor has failed to establish the first element of "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4).

### SECTION 523(a)(4): EMBEZZLEMENT

■■■■■ Embezzlement is "the fraudulent appropriation of property of another by a person to whom such property has

been entrusted or into whose hands it has lawfully come." *In re Phillips*, 882 F.2d 302, 304 (8th Cir.1989). To establish embezzlement, Plaintiff must prove: (1) Debtor was entrusted with property or lawfully came into possession of property of another; (2) Debtor was under a prior restraint, whether written or verbal, as to the use of the property; and (3) the terms of restraint were violated by Debtor's use of the property. *In re Belfry*, 862 F.2d 661, 663 (8th Cir.1988); *see also In re Vandaver*, Adv. No. 99–9188–C, slip op. at 6 (Bankr.N.D. Iowa April 10, 2000).

This Court has concluded that Plaintiff failed to establish consignment. The transactions involved constituted sales and Debtor held title to the tractors at the time he took possession. Debtor did not possess the Plaintiff's property but rather his own. Debtor's actions cannot constitute embezzlement and Plaintiff's claim under that portion of § 523(a)(4) has not been proven.

### SECTION 523(a)(4): LARCENY

An exception to discharge for larceny under 11 U.S.C. § 523(a)(4) requires proof that the debtor wrongfully and intentionally took another's property. *In re Purdy*, 231 B.R. 310, 312 (Bankr. E.D.Mo.1999). The larceny exception cannot apply where the debtor's original possession of the things in question was lawful. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993). Debtor did not possess Plaintiff's property improperly. Title transferred to Debtor at the time of sale and Debtor's actions do not constitute larceny. Plaintiff's claim for an exception to discharge for larceny under § 523(a)(4) must, therefore, be denied.

### PLAINTIFF'S NONDISCHARGE-
### ABILITY CLAIMS UNDER
### 11 U.S.C. § 523(a)(6)

Plaintiff's complaint further alleges that the debt should be non-dis-

chargeable due to "willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" and "malicious" are two separate elements and each must be proven by the plaintiff in order to receive an exception to discharge. *In re Scarborough*, 171 F.3d 638, 641 (8th Cir.1999). The "willful" element of § 523(a)(6) requires "Plaintiff to show that Debtor intended the injury, not that the deliberate or intentional act lead to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Reckless or negligent conduct is not sufficient. *Geiger*, 523 U.S. at 62, 118 S.Ct. 974.

The "malicious" element requires Plaintiff to show that Debtor's conduct was targeted at him, at least in the sense that the conduct was certain or almost certain to cause him harm. *In re Madsen*, 195 F.3d 988, 989 (8th Cir.1999). The Court may look at the likelihood of harm in an objective sense to evaluate Debtor's intent in finding malice. *In re Long*, 774 F.2d 875, 881 (8th Cir.1985).

Plaintiff bears the burden of proof in showing that Debtor intended to injure him by not paying for the tractors. *Grogan*, 498 U.S. at 286–87, 111 S.Ct. 654. Debtor testified that when he did not remit the sale proceeds to Plaintiff, he was "robbing Peter to pay Paul." Debtor knew that withholding the sale proceeds would harm Plaintiff. Debtor withheld the proceeds in order to pay other creditors. The Court finds that Debtor acted willfully under § 523(a)(6).

However, Plaintiff must also prove that Debtor acted maliciously in failing to pay Plaintiff. *Scarborough*, 171 F.3d at 641. This is a difficult standard. Knowledge that legal rights are being vio-

lated is insufficient to establish malice, absent some additional aggravated circumstances. *Long,* 774 F.2d at 881. Proof of malice requires proof of a "heightened level of culpability ... going beyond recklessness and beyond intentional violation of a security interest." *Long,* 774 F.2d at 881. Plaintiff must establish that the conduct precipitating the damage was targeted at the creditor. *In re Alcorn,* Adv. No. 00–9179–C, slip. op. at 3 (Bankr.N.D.Iowa Feb. 22, 2001).

Debtor testified that in not paying Plaintiff, he was "robbing Peter to pay Paul." Withholding payment from one creditor to pay another or to pay living expenses, does not, in and of itself, establish malice. *Jerdee,* Adv. No. 99–9053–C, slip op. at 4 (Bankr.N.D.Iowa Apr. 10, 2000); *see also In re Mausser,* Adv. No. 98–01548–D, slip op. at 3 (Bankr.N.D.Iowa Feb. 3, 2000). Similarly, withholding payment is not malicious if it is done to allow the debtor to remain in business or to protect his financial interests. *In re McGraw,* Adv. No. 97–01428–W, slip op. at 9 (Bankr.N.D.Iowa Dec. 3, 1998).

Because Debtor was using the money from the sale of the tractors to pay other creditors, Plaintiff must establish the presence of aggravating circumstances in order to prove malice. *Long,* 774 F.2d at 881. In viewing Debtor's failure to pay Plaintiff apart from Debtor's actions when Plaintiff attempted to collect the debt, it is clear that there are no additional circumstances that warrant a finding of malice. The parties' relationship was amicable until 2000, well after Debtor used the sale proceeds for his own use. Debtor and Plaintiff had a pre-existing relationship that was altered only by Debtor's financial problems. There is no indication that Debtor maliciously used the proceeds to spite Plaintiff.

## DEBTOR'S CLAIM FOR HAULING EXPENSE

Debtor claims that Plaintiff owes him trucking expenses in the amount of $4,566.00. Debtor did not list the dates that Plaintiff incurred the expenses. Debtor did not list this bill as "accounts receivable" in his bankruptcy petition. Plaintiff testified that he paid Debtor upon completion of each hauling service. Debtor did not bill Plaintiff until December 8, 2001, three months after he filed his bankruptcy petition. This Court finds Debtor's claim devoid of merit.

**WHEREFORE,** Plaintiff Gene Brown's claim to except debt from discharge under 11 U.S.C. § 523(a)(4) for fraud while acting in a fiduciary capacity is **DENIED.**

**FURTHER,** Plaintiff's claim to except debt from discharge under 11 U.S.C. § 523(a)(4) for embezzlement or larceny is **DENIED.**

**FURTHER,** Plaintiff's claim to except debt from discharge under 11 U.S.C. § 523(a)(6) for malicious and willful injury is **DENIED.**

**FURTHER,** Debtor's claim against Plaintiff for hauling expenses is **DENIED.**

**FURTHER,** judgment shall be entered accordingly in favor of Defendant/Debtor Morgan Ira Heister and against Plaintiff Gene Brown.