LESTER A. JOHNSON, APPELLANT, v. HOLDREGE COOPERATIVE EQUITY EXCHANGE AND MAYNARD ORTEGREN, APPELLEES.

293 N. W. 2d 863

Filed June 24, 1980. No. 42909.

William H. Sherwood and Charles J. Cuypers of Sherwood Law Office, for appellant.

Kent E. Person of Person, Dier, Person & Osborn, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The appellant, Lester A. Johnson, filed suit in the District Court for Phelps County, Nebraska, against appellees, Holdrege Cooperative Equity Exchange and Maynard Ortegren (Equity), for an alleged breach of an oral contract to purchase wheat at market and a premium based on the protein content of the delivered wheat. Equity answered, alleging that Johnson's wheat was delivered for storage and denying any agreement for the payment of a protein bonus. Equity filed a motion for summary judgment. The trial court sustained the motion and dismissed Johnson's petition. Johnson appeals. We reverse and remand.

Summary judgment is an appropriate remedy when only a question of law is presented and there is no genuine issue of material fact. Neb. Rev. Stat. § 25-1332 (Reissue 1975); *Farmland Service Coop, Inc. v. Klein,* 196 Neb. 538, 244 N.W.2d 86 (1976).

In the order sustaining the motion, the trial court held: "(2) That the delivery of wheat to the defend-

ant Coop did not constitute a delivery contemplated under U.C.C. § 2-201 (1943) . . . ."

Johnson assigns that the trial court erred in its findings. To resolve this matter, it is necessary to review the facts shown by the evidence received by the court on the motion.

Johnson testified by deposition that, in late June and early July 1976, he spoke with Maynard Ortegren, manager of Equity, and was assured by him that "I'd receive the protein premium." Approximately 10,000 bushels of wheat were delivered to Equity and a sample was taken from each load for protein testing. Johnson was charged for the testing. The delivery was completed by July 5, 1976. Johnson did not sell the wheat before delivery, but later in July, returned to Equity intending to sell the wheat. Maynard Ortegren informed Johnson that Equity would not pay market plus an individual protein premium, but would, instead, pay Johnson, and all others who sold wheat, a "station average" premium on all wheat delivered to Equity during the season. Johnson refused to sell the wheat and later accepted a warehouse receipt for the wheat and paid storage charges on the wheat.

Maynard Ortegren, the manager, testified by deposition and denied that he agreed to pay Johnson an individual protein premium but that all wheat would be purchased on a "station average" basis. He confirmed that all individual loads were tested and the tests billed to the customers. Then the loads were commingled with other wheat in the elevators. Later, in another conversation with Johnson, after delivery, he again told him that he would be paid only "station average." Johnson became quite angry and did not sell the wheat. No witness testified that Johnson discussed storing his wheat prior to the last discussion with Maynard, merely that the Public Service Commission rules require that grain not settled for in 30 days after delivery must be considered

stored and a warehouse receipt must be issued. Nebraska U.C.C. § 2-201 (Reissue 1971) provides, in part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable . . . unless there is some writing . . . .

. . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . . .

(c) with respect to goods for which payment has been made and accepted or *which have been received and accepted* (section 2-606).

(Emphasis supplied.)

Was there a receipt and acceptance of the wheat to remove the bar of the statute of frauds? We do not make judgment on the truth of the conflicting versions of the conversations in reviewing the grant of a motion for summary judgment. We merely determine whether there is a conflict and, accepting the version most favorable to the nonmoving party, whether an action thereon would lie. The burden is upon the party moving for summary judgment to show that no issue of fact exists, and unless he can conclusively do so, the motion must be overruled. *Farmland Service Coop, Inc. v. Klein, supra.* There is an obvious issue of fact, and if the jury should believe that Johnson delivered the wheat for sale for market plus an individual protein premium, the failure to state the price and premium would not be fatal and Johnson would be entitled to recover his damages.

If there has been an actual delivery and the price is capable of being made definite, delivery of goods may be sufficient to constitute a sale. *Rotterman v. General Mills, Inc.,* 245 Iowa 229, 61 N.W.2d 718 (1953). Nebraska U.C.C. § 2-606 (Reissue 1971) provides as

follows: "(1) Acceptance of goods occurs when the buyer . . . (c) *does any act inconsistent with the seller's ownership*; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." (Emphasis supplied.)

The testing of the grain by single loads and the commingling so as to make the particular wheat unrecoverable were acts consistent with Equity's ownership and inconsistent with Johnson's ownership. The protein content of the commingled grain was less than that of Johnson's grain alone. Such an alteration in the condition of the goods may constitute an act inconsistent with the seller's ownership, amounting to an acceptance under the U.C.C. *Chemical Corp. v. Paint Co.,* 31 N.C. App. 221, 229 S.E.2d 55 (1976); *Mazur Bros. and Jaffe Fish Co., Inc.,* 3 U.C.C. Rep. Serv. 419 (Veterans Administration Contract Appeals Board 1965).

The judgment of the trial court is reversed and remanded for proceedings not inconsistent herewith.

REVERSED AND REMANDED.