JOSEPH HEITING AND SONS, A PARTNERSHIP, APPELLANT, V. JACKS BEAN COMPANY, A COLORADO CORPORATION, APPELLEE.

463 N.W.2d 817

Filed December 14, 1990.    No. 88-774.

Peter C. Wegman, of Rembolt Ludtke Parker & Berger, for appellant.

Paul W. Snyder, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The plaintiff, Joseph Heiting and Sons (Heiting), has appealed the order of the district court which entered summary judgment in favor of the defendant, Jacks Bean Company (Jacks). Heiting had filed suit for damages for breach of an alleged oral contract for the sale of its beans to Jacks. Heiting assigns as error that the court incorrectly determined that there were no genuine issues of material fact and failed to find that an exception to the statute of frauds provision of Neb. U.C.C. § 2-201 (Cum. Supp. 1990) applied to the facts of this case. We reverse and remand for further proceedings.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record show that no genuine issue exists as to any material fact or as to the ultimate inferences that may be drawn from any material fact and that, as a matter of law, the moving party is entitled to judgment. Neb. Rev. Stat. § 25-1332 (Reissue 1989); *First Nat. Bank v. Chadron Energy Corp., ante* p. 199, 459 N.W.2d 736 (1990); *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). In reviewing a summary judgment, we view the evidence in a light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Jacks is a Colorado corporation with headquarters in Holyoke, Colorado. Jacks purchases beans at its warehouse,

processes the beans, and eventually sells the beans. Jacks has a procedure in receiving the beans. A grower brings the beans to Jacks' facility in Sheridan County, Nebraska. The manager of the facility, Richard Schneider, takes a 500-gram sample from the load of beans and grades the beans on a scale of 1 to 5 based on the amount of split beans, stems, dirt, and other debris (tare) in the sample. Grade 1 is the highest and grades 4 and 5 are substandard.

If the grade assigned is acceptable to the grower, the beans are dumped into a bin at Jacks' facility and are commingled with beans from other growers. When the bins are full, the beans are transported to Jacks' processing plant, where the beans are processed. The beans are considered stored if the grower and Jacks have not reached an agreement for sale and purchase within 30 days despite the fact that a grower's particular beans may have already been processed. The storage charge to the grower is $0.003 per hundredweight per day.

Schneider receives a daily call from Jacks' headquarters in Holyoke, Colorado, advising Schneider of the prices for the various types of beans to be purchased by Jacks that day. The prices generally remain the same throughout the day, but the prices are subject to change. The daily prices are posted in the grading room at Jacks' facility, published in the Scottsbluff, Nebraska, newspaper, and broadcast over the Alliance, Nebraska, radio station. Ordinarily, the process of calling in and selling the beans previously delivered to Jacks is not in writing.

Joseph Heiting and Sons is a partnership consisting of Joseph Heiting and his sons, Steve and Tim. The partnership is engaged in farming. The partners each have a one-third interest in the partnership; however, Joseph Heiting (Mr. Heiting) does the selling. Heiting delivered its beans to Jacks from September 18 to September 29, 1987. Each load was graded, weighed, and receipted for by delivery of a scale ticket. During that time, Heiting delivered 12 loads of beans for a total of 2,837.75 hundred-pound bags, each assigned grade 1. The beans were commingled at Jacks' facility in Sheridan County with beans from other producers and shipped to Jacks' processing facility.

On September 30, 1987, Mr. Heiting called and told

Schneider that he wanted to sell Heiting's beans. The posted price was $19. Mr. Heiting was told by Schneider that he would "call them in." Mr. Heiting construed this to mean that the beans were sold at $19. Mr. Heiting believed Jacks could purchase all the beans Heiting had to sell at the posted price because he was never informed that there was limited buying.

Schneider did not recall if he or Cheryl Johnson, the bookkeeper and receptionist for Jacks, had spoken to Mr. Heiting. Schneider later stated that he had told Mr. Heiting of the limited buying when Mr. Heiting called Jacks to sell the beans.

Mr. Heiting discovered 1 or 2 days after September 30 that Jacks had not purchased the beans. The price had dropped to $18 per bag. Mr. Heiting made no attempt to sell at that price. The beans were sold in March 1988 at a price of $15 per bag. Mr. Heiting was not called back for verification of the purchase.

Although the beans were not purchased by Jacks until March 1988, Heiting received a separate check in 1987 as a freight payment of $0.25 per hundredweight for all beans delivered to Jacks. Schneider testified that the freight payment is due when a load of beans is hauled to Jacks' facility.

Heiting brought this action based on an alleged oral contract between the parties to purchase all the beans stored at Jacks for $19 per bag.

A fundamental concept in contract law is that to create a contract there must be both an offer and an acceptance. There must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. See *Woods v. Woods*, 177 Neb. 542, 129 N.W.2d 519 (1964). A contract may be written or oral and can be shown by circumstantial evidence. See *Woods, supra*.

Summary judgment would not be proper if conflicting evidence is presented to show whether a contract existed. See *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207 (8th Cir. 1976). When the issue is whether an acceptance of an offer was sufficient to create a contract, the issue is one of fact and summary judgment is not proper. See, *Hansen v. Hill*, 215 Neb. 573, 340 N.W.2d 8 (1983); *Duplex Mfg. Co. v. Atlas Leasing Corp.*, 184 Neb. 294, 166 N.W.2d 732 (1969); *Fay*

*Smith & Associates, Inc. v. Consumers P. P. Dist.*, 172 Neb. 681, 111 N.W.2d 451 (1961).

Heiting has alleged that the posting of a price was an offer which it accepted. Heiting argues in the alternative that Heiting offered the beans for sale and the offer was accepted. In considering the first alternative it is necessary to look at the case of *Nebraska Seed Co. v. Harsh*, 98 Neb. 89, 152 N.W. 310 (1915). In *Harsh*, a letter was sent by Harsh to Nebraska Seed Company indicating that Harsh wanted to sell a quantity of seed and the price at which he would sell the seed. Nebraska Seed Company sent a letter to Harsh accepting the offer. Harsh failed to deliver the seed. This court concluded that Harsh's letter was not an offer but rather a proposal to make an offer. We stated that " '[t]he mere statement of the price at which property is held cannot be understood as an offer to sell.' " *Id.* at 91, 152 N.W. at 311 (quoting *Knight v. Cooley*, 34 Iowa 218 (1872)). The posting of the price on the grading room wall is similar to Harsh's letter. The posting is not an offer. The posting was merely an offer to negotiate directed at the bean growers.

Negotiations began when Mr. Heiting contacted Jacks in an effort to sell Heiting's beans. Mr. Heiting informed Jacks that he was willing to sell all Heiting's beans stored at Jacks for the price posted on the wall. The quantity and price were in the offer.

The offer was communicated to Schneider or Johnson at Jacks' facility. At the time the offer was communicated, Mr. Heiting was told that the sell orders would be called in. The sell orders were the offers to sell the quantity on hand at the posted price. Mr. Heiting did not learn until 1 or 2 days after September 30 that the beans had not been purchased.

Acceptance of an offer may be expressed in a variety of forms. Acceptance may be illustrated by " 'words, conduct, or acquiescence indicating agreement.' " *Overman v. Brown*, 220 Neb. 788, 791, 372 N.W.2d 102, 105 (1985) (quoting 17 C.J.S. *Contracts* § 41 (1963)). Acceptance by an alleged act, words, or conduct is determined by a reasonable person standard. *Overman v. Brown, supra* (citing *In re Mapes Enterprises, Inc.*, 15 Bankr. 192 (D. Nev. 1981)). Acceptance may also be indicated by the silence and inaction of an offeree. *David City*

*Hospital v. Gilmore*, 184 Neb. 342, 167 N.W.2d 397 (1969).

Heiting offered to sell its beans at the posted price on September 30, 1987. Mr. Heiting was never informed of acceptance or rejection of the offer. When Heiting eventually did sell its beans to Jacks in March 1988, the purchase was not verified. Heiting was not informed of the acceptance or rejection of the offer. Thus, in March, the acceptance was by silence. Whether the offer was accepted in September by silence or inaction is an issue of material fact as to the existence of the alleged oral contract; therefore, summary judgment was not proper on the issue of whether a contract existed.

Next, we consider whether § 2-201, the statute of frauds, applies. The statute reads in pertinent part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

. . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . .

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606).

Although Schneider's deposition testimony suggests that when a producer calls in and says he wants to sell a quantity of beans and the offer is accepted there is nothing in writing between the parties to consummate the sale, exceptions to the provisions of the statute of frauds found in the Uniform Commercial Code cannot be enlarged by usage in the trade. *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239

N.W.2d 808, 814 (N.D. 1976) ("exceptions to the Statute of Frauds cannot be enlarged by usage in the trade, such as a consistent failure of grain dealers to utilize written agreements in their dealings with farmers").

The statute of frauds clearly applies in this case. The sale of beans constitutes the sale of goods. The price involved is in excess of $500. Therefore, the contract for the sale and purchase of the beans is required to be in writing, or enforcement of the contract may be barred by the statute of frauds. In this case, we are concerned with the exception regarding receipt and acceptance of goods as evidence of a contract.

Heiting delivered its beans to Jacks' warehouse. The beans were commingled with beans from other growers, stored in bins, shipped to Jacks' processing facility, and eventually processed. Heiting urges the court to consider these acts as receipt and acceptance of the goods under § 2-201(3)(c), which would make the statute of frauds inapplicable to the alleged agreement.

Heiting argues that the goods have been received and accepted as defined by the Nebraska Uniform Commercial Code. Receipt of goods is defined as "taking physical possession of them." Neb. U.C.C. § 2-103(1)(c) (Reissue 1980). Acceptance occurs when the buyer "does any act inconsistent with the seller's ownership . . . ." Neb. U.C.C. § 2-606(1)(c) (Reissue 1980).

This court has examined the issue of receipt and acceptance of goods on several occasions. In the case of *In re Estate of Nelsen*, 209 Neb. 730, 311 N.W.2d 508 (1981), we noted that delivery alone is not sufficient to take an oral contract for the sale of goods at a price of $500 or more out of the statute of frauds. The goods must be " 'received and accepted' " to render the statute of frauds inapplicable. *Id.* at 733, 311 N.W.2d at 510. Thus, delivery of the beans to Jacks' warehouse would not be enough. There must have been an acceptance.

In *Johnson v. Holdrege Coop. Equity Exchange*, 206 Neb. 568, 293 N.W.2d 863 (1980), an oral contract was entered into before the grain was delivered. At the time of delivery, the grain was tested and commingled with other grain. The grower's

particular grain was impossible to recover. We noted that the actions of the warehouse were inconsistent with the grower's ownership. This court concluded that the actual delivery of goods at a time the price was capable of being made definite may be sufficient to constitute an acceptance. See *Rotterman v. General Mills, Inc.*, 245 Iowa 229, 61 N.W.2d 718 (1953). We held that there was an issue of fact and that therefore summary judgment was not proper.

The grower's grain in *Johnson* was commingled with grain of a lesser quality. Heiting's beans were commingled with beans of the same quality as those delivered. However, in both cases the particular goods delivered could not be returned in the same condition as the goods were in when delivered. The Iowa Supreme Court has stated that when the original goods cannot be returned it may be a sale. See *Rotterman, supra.* Heiting's original beans could not be returned. Although this is not conclusive on the issue of acceptance of the goods, it does offer some support to that proposition.

"Acceptance," as it is used in § 2-201(3)(c), could be evidenced by the following:

(1) Heiting could do nothing further to deliver or present the beans for acceptance. The beans were out of Heiting's control. Delivery occurs when the seller does everything necessary to put goods completely and unconditionally at the buyer's disposal. *Goosic Constr. Co. v. City Nat. Bank of Crete*, 196 Neb. 86, 241 N.W.2d 521 (1976).

(2) Jacks could do nothing further to indicate acceptance of the beans except to pay for the beans. Jacks had already exercised complete control over the beans. See, generally, *O'Day v. George Arakelian Farms, Inc.*, 24 Ariz. App. 578, 540 P.2d 197 (1975) (holding that lettuce was received and accepted because buyer did acts inconsistent with seller's ownership).

(3) The particular beans of Heiting's could not be returned. See, generally, *Rotterman, supra* (finding that where seller cannot get the original grain back, it may be a sale).

There is an issue as to whether or not the receipt and acceptance of the goods were sufficient to bar the application of the statute of frauds. Therefore, summary judgment was not proper.

The North Dakota Supreme Court has stated that "where the conduct that is relied upon for part performance is consistent with the contract, such conduct is sufficient to take the contract out of the statute of frauds even though the conduct is not inconsistent with some other arguable possible arrangement between the parties." *Hofmann v. Stoller*, 320 N.W.2d 786, 791 (N.D. 1982). The conduct of the parties could be perceived as consistent with an oral contract.

In *Wilson v. Remmel Cattle Co., Inc.*, 542 S.W.2d 938 (Tex. Civ. App. 1976), the appellants, the Wilsons, delivered to and placed in a separate pen on the premises of Remmel Cattle Co., Inc., a commercial feedlot engaged in feeding and marketing cattle, a quantity of Wilsons' cattle. The agreement was that the Wilsons would feed and medically attend to their cattle, furnishing the necessary feed and medicine. For the use of the pen, the Wilsons were to perform custom cattle work for Remmel.

Later, Remmel Cattle Co. and Charles Kent Remmel, the manager of the feedlot, sued the Wilsons for feed and care of the cattle, and the Wilsons counterclaimed, alleging an oral agreement pursuant to which the Remmels orally agreed to purchase these cattle. A jury failed to find that the Wilsons agreed with the Remmels to furnish feed and maintenance for the cattle, but found that the Remmels agreed to purchase the cattle for a certain amount, and returned a verdict in a dollar amount for the Wilsons. The trial court denied the Wilsons' motion for judgment on the verdict, but granted Remmels' motion for judgment notwithstanding the verdict. The Wilsons appealed.

In reversing the judgment and remanding the cause, the Texas appeals court stated:

> In our view and contrary to the respective positions of the Wilsons and the Remmels, neither receipt and acceptance nor non-receipt and non-acceptance was established by the evidence as a matter of law. The fact that the cattle were located in the feedlot at the time of the pleaded oral contract does not, under the description of the agreement placing them there, either establish physical possession in the Remmels so as to foreclose their taking physical

possession under a later contract of sale or ripen into their receipt and acceptance of the cattle upon the mere showing of an oral contract. . . . Their [the parties'] testimony, which only scantly described their dealings, was neither undisputed nor so clear as to conclusively show whether the Remmels did or did not receive and accept the cattle pursuant to an oral contract, and merely raised that factual issue for resolution by the jury.

*Id*. at 941-42.

We agree that where the evidence as to receipt and acceptance under the Uniform Commercial Code is not conclusive, the question is one of fact to be resolved by the fact finder.

It cannot be said that there exist no genuine issues of material fact. Summary judgment was inappropriate in this instance. The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.