LOGAN RANCH, KARG PARTNERSHIP, A PARTNERSHIP, APPELLANT AND CROSS-APPELLEE, V. FARM CREDIT BANK OF OMAHA, APPELLEE AND CROSS-APPELLANT.
472 N.W.2d 704

Filed August 2, 1991.   No. 89-338.

Richard E. Gee for appellant.

Tim W. Thompson, of Kelley, Scritsmier, Moore & Byrne, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Logan Ranch, Karg Partnership, a partnership (Logan), appeals the granting of summary judgment to the Farm Credit Bank of Omaha (FCB). In its first cause of action, Logan brought suit for specific performance of a purchase agreement. Pursuant to 12 U.S.C. § 2219a (1988) of the Agricultural Credit Act of 1987 (Act), FCB sent Logan notice of its right of first

refusal along with a purchase agreement containing the terms which FCB would accept. Logan altered the purchase agreement and delivered it to FCB. Logan's offer was rejected. FCB attempted to sell the property, but this lawsuit intervened. FCB then leased the property to the prospective purchasers. In its second cause of action, Logan alleged it had a right of first refusal to lease under the Act. The district court granted FCB's motion for summary judgment.

Summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such facts and that the moving party is entitled to judgment as a matter of law. *Eastroads, Inc. v. City of Omaha*, 237 Neb. 837, 467 N.W.2d 888 (1991); *Tuttle & Assoc. v. Gendler*, 237 Neb. 825, 467 N.W.2d 881 (1991). After the movant has shown facts entitling the movant to summary judgment as a matter of law, the opposing party has the burden of presenting evidence to show an issue of material fact which prevents a judgment as a matter of law. *Eastroads, Inc. v. City of Omaha, supra; Tuttle & Assoc. v. Gendler, supra.* In an appellate review of a summary judgment, the court reviews the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *First Nat. Bank v. Chadron Energy Corp.*, 236 Neb. 199, 459 N.W.2d 736 (1990).

The section of the Act concerning the right of first refusal states in pertinent part:

(a) General rule

*Agricultural real estate* that is *acquired by an institution of the System as a result of a loan foreclosure or a voluntary conveyance by a borrower* (hereinafter in this section referred to as the "previous owner") *who*, as determined by the institution, *does not have the financial resources to avoid foreclosure* (hereinafter in this section referred to as "acquired real estate") *shall be subject to the right of first refusal of the previous owner to repurchase or lease the property*, as provided in this section.

(b) Application of right of first refusal to sale of property

(1) Election to sell and notification

*Within 15 days after an institution of the System first elects to sell acquired real estate,* or any portion of such real estate, *the institution shall notify the previous owner by certified mail of the owner's right—*

(A) *to purchase the property at the appraised fair market value of the property,* as established by an accredited appraiser; or

(B) *to offer to purchase the property at a price less than the appraised value.*

(2) Eligibility to purchase

*To be eligible to purchase the property under paragraph (1),* the *previous owner must, within 30 days after receiving the notice required* by such paragraph, *submit an offer to purchase the property.*

(3) Mandatory sale

An institution of the System receiving an offer from the previous owner to purchase the property at the appraised value shall, within 15 days after the receipt of such offer, accept such offer and sell the property to the previous owner.

. . . .

(5) Rejection of offer of previous owner

(A) Duties of institution

An institution of the System that rejects an offer from the previous owner to purchase the property at a price less than the appraised value may not sell the property to any other person—

(i) at a price equal to, or less than, that offered by the previous owner; or

(ii) on different terms and conditions than those that were extended to the previous owner,

without first affording the previous owner an opportunity to purchase the property at such price or under such terms and conditions.

(B) Notice

Notice of the opportunity in subparagraph (A) shall be provided to the previous owner by certified mail, and the previous owner shall have 15 days in which to submit an

offer to purchase the property at such price or under such terms and conditions.

(c) Application of right of first refusal to leasing of property

(1) Election to lease and notification

*Within 15 days after an institution of the System first elects to lease acquired real estate, or any portion of such real estate,* the *institution shall notify the previous owner by certified mail of the owner's right—*

(A) *to lease the property at a rate equivalent to the appraised rental value of the property,* as established by an accredited appraiser; *or*

(B) *to offer to lease the property at a rate that is less than the appraised rental value of the property.*

(2) Eligibility to lease

*To be eligible to lease the property under paragraph (1),* the *previous owner must, within 15 days after receiving the notice required by such paragraph, submit an offer to lease the property.*

(3) Mandatory lease

An institution of the System receiving an offer from the previous owner to lease the property at a rate equivalent to the appraised rental value of the property shall, *within 15 days after the receipt of such offer, accept such offer and lease the property to the previous owner* unless the institution determines that the previous owner—

(A) does not have the resources available to conduct a successful farming or ranching operation; or

(B) cannot meet all of the payments, terms, and conditions of such lease.

. . . .

(e) Term or condition

For the purposes of this section, financing by a System institution shall not be considered to be a term or condition of a sale of acquired real estate.

(f) Financing

Notwithstanding any other provision of this section, a System institution shall not be required to provide financing to the previous owner in connection with the

sale of acquired real estate.

(g) Mailing of notice

   Notwithstanding any other provision of this section, each certified mail notice requirement in this section shall be fully satisfied by mailing one certified mail notice to the last known address of the previous owner.

(Emphasis supplied.) 12 U.S.C. § 2219a.

Logan is a partnership consisting of three equal partners: Gerald J. Karg, Victor W. Karg, and Albert E. Karg. In 1984, Logan deeded tracts of land to FCB, which was at that time known as The Federal Land Bank. The transfer of the real estate was part of a deed in lieu of foreclosure arrangement between FCB and Logan. FCB undertook efforts to sell the property immediately. The property was listed with a realtor for sale. In 1986, the real estate was leased on an annual basis to Gene Welsh.

In 1988, FCB and Welsh negotiated the purchase of the property. At least some negotiations for the purchase had taken place prior to March 1988. While the negotiations were taking place, the Act became law. Pursuant to the Act, FCB gave the "previous owner," Logan, notice that it could purchase the subject property at its appraised value. The notice was sent by certified mail to Logan on March 3, 1988, at Logan's standard post office address. The notice included a purchase agreement setting forth the terms and conditions that FCB would accept to sell the property back to the previous owner. The notice indicated that the offer would have to be received on the enclosed FCB purchase agreement, Form 6036, within 30 days. The certified mailing was picked up and signed for on March 15, 1988, by Karen Parish in the space provided for the agent. Parish was the secretary for the partnership as well as for Gerald Karg. Gerald Karg testified that he did not actually open the letter until March 21, 1988.

On March 8, 1988, an offer to purchase the property was presented to FCB by Gene and Ann Welsh. The offer to purchase was accepted by FCB on March 8, 1988, subject to the requirements of the Act.

Albert and Victor Karg returned the purchase agreement to FCB on April 15 at approximately 4:55 p.m. David Leggott, the

FCB officer in charge, was also requested by the Kargs to pick up a loan commitment from an outside lender, which was Telefaxed that afternoon. Only the second page of the loan commitment was received through the Telefax machine.

Leggott reviewed the purchase agreement and determined that it was untimely and contained terms and conditions which were different from those originally sought. Leggott testified that pursuant to the Act, the 30-day period would have expired on April 14. Leggott started the 30-day period on the day after the certified letter was signed for by Parish.

The terms which differed from the original offer were (1) the offer was subject to receiving financing and (2) the offer was made by three individuals, as opposed to the previous owner. The three individuals who signed the offer were the three partners of the previous owner, Logan. The individuals did not indicate that they were signing on behalf of the partnership. These same three individuals were members of several other partnerships that had previously dealt with FCB.

On April 18, 1988, Leggott sent another letter by certified mail to the same address, informing Logan that the offer was rejected. The certified letter was again picked up and signed for by Parish.

Leggott testified that if the purchase agreement submitted by Logan had complied with the terms of the notice, FCB would have sold the property to Logan. There was a clause in the purchase agreement with the Welshes to allow the sale to Logan within the confines of the Act.

After the offer had been rejected, FCB intended to complete its sale with the Welshes and also with a William and a Sara Morgan. This lawsuit intervened, and thus the property could not be sold. FCB opted to lease the property to the Welshes and Morgans because of the commitment to sell the property to the Welshes, the lateness of the season, and because the Welshes had already undertaken the ground preparation for the planting of the 1988 crop. As a result, Logan was not offered a lease on the property.

FCB moved for summary judgment in that no genuine issue of material fact existed and thus it was entitled to summary judgment as a matter of law. FCB alleged in its motion that

notice as required by the Act was given and Logan failed to timely respond and that the response when received contained terms different from those proposed by FCB. On the second cause of action, FCB contended that the property would have been sold rather than leased had Logan not initiated this lawsuit.

The district court found that as a matter of law the terms and conditions submitted by Logan were materially different from those stated in the notice, in that the offer was contingent upon financing and was not submitted by the previous owner. The district court also held that but for this lawsuit, FCB would not have leased the property and the sale of the property would have been complete. The district court further stated that it was not clear as a matter of law that Parish had actual or apparent authority to pick up certified mail. Therefore, the court did not make a finding as to whether the offer was timely made by Logan.

Plaintiff claims that the district court erred (1) in finding that the terms of the offer submitted by Logan were materially different from those stated in the notice; (2) in finding that the form offer prepared by FCB was not submitted by the "previous owner," Logan Ranch, Karg Partnership, a partnership, when the form was signed by the partners, Gerald Karg, Albert Karg, and Victor Karg, and intended by them to be an offer by the partnership; (3) in interpreting the Act to excuse FCB from giving Logan notice of its intention to lease the property because Logan filed this suit; and (4) in granting FCB's motion for summary judgment and dismissing the second amended petition.

Defendant in its cross-appeal alleges that the district court erred in concluding that it was not clear as a matter of law that the secretary for Logan had actual or apparent authority to pick up certified mail and direct it to the partnership and to sign the return receipt.

A definite proposal and an unconditional and absolute acceptance thereof are necessary to establish an express contract. Furthermore, it is essential that the minds of the parties meet at every point and that nothing be left open for future arrangement for a binding contract to exist. *Satellite*

*Dev. Co. v. Bernt*, 229 Neb. 778, 429 N.W.2d 334 (1988); *Rybin Investment Co., Inc. v. Wade*, 210 Neb. 707, 316 N.W.2d 744 (1982). See, also, *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991).

The terms set forth by FCB in the purchase agreement pertinent to this discussion are that (1) the price of the real estate will be $988,500, with an earnest money deposit of $98,850; (2) the balance of the purchase price must be paid when the deed is delivered; and (3) closing will take place on or before April 15, 1988.

Logan returned the purchase agreement to FCB on April 15, 1988. Logan altered the agreement, adding the following conditions and terms: (1) a balance of $150,000 will be paid in cash or by certified check when the deed is delivered, conditional upon Logan's ability to obtain a loan in the amount of at least $739,650 from Nor-West Trust, and (2) the application for the loan is to be made within 30 days of acceptance of the offer, with the offer to become null and void if such loan commitment is not received within 60 days.

In determining if a valid contract exists, first the purchase agreement sent by FCB to Logan must be examined, as must the purchase agreement sent by Logan to FCB.

The Restatement (Second) of Contracts § 58 at 144 (1981) states: "An acceptance must comply with the requirements of the offer as to the promise to be made or the performance to be rendered." An acceptance that is materially different does not comply with the requirements of the offer.

In *Rybin Investment Co., Inc. v. Wade, supra*, this court found that acceptance of an offer must be an unconditional acceptance of the offer as made, otherwise there is no contract formed. Where the acceptance differs from the offer and is coupled with any condition that varies or adds to the offer, it is not an acceptance; rather, it is a counteroffer. See Restatement (Second) of Contracts § 59 (1981). (The Restatement states that "[a] reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *Id*. at 145.)

The court in *Rybin Investment Co.* continued, finding that

where one to whom an offer has been made makes a counteroffer of different terms and conditions, the counteroffer is in reality a rejection of the original offer. See, *Griggs v. Oak*, 164 Neb. 296, 82 N.W.2d 410 (1957); *Farmers Union Fidelity Ins. Co. v. Farmers Union Co-op. Ins. Co.*, 147 Neb. 1093, 26 N.W.2d 122 (1947).

In *Anderson v. Stewart*, 149 Neb. 660, 32 N.W.2d 140 (1948), this court found that a purchase agreement with a condition connected to the acceptance was not enforceable. The buyer sent back an acceptance of the offer which stated that the seller had to send the deed to a certain bank in order to receive the purchase price. The court held that this was not an unconditional acceptance. The court stated:

> "The acceptance of an offer to buy or sell real estate must be an unconditional acceptance of the offer as made; otherwise no contract is formed. . . . If the acceptance differs from the offer or is coupled with any condition that varies or adds to the offer, it is not an acceptance, but is a counterproposition. . . ."

*Anderson, supra* at 663-64, 32 N.W.2d at 142. See, also, 1 A. Corbin, Corbin on Contracts §§ 89 and 90 (1963). The court found that the acceptance was not unconditional in that it required the offeror to perform duties other than those contemplated by the offeror at the time the offer was made.

If the purchase agreement sent by FCB was an offer, the offer was never unconditionally accepted by Logan. Logan did not accept the terms of the offer and in fact added new terms to the offer. The new terms included acceptance conditional upon financing, allowing Logan up to 60 more days to attain financing. The offer was not unconditionally accepted by Logan. The new terms added by Logan were in essence a counteroffer by Logan to FCB. A counteroffer acts as a rejection of the original offer. Logan rejected the offer of FCB to purchase the property; therefore, the remedy of specific performance on the purchase agreement is not available.

If, instead, Logan is requesting specific performance of the purchase agreement as amended by Logan, the remedy of specific performance on this purchase agreement is also not available. The counteroffer made by Logan was never accepted

by FCB, as evidenced by the testimony of Leggott and the letter rejecting the offer sent to Logan on April 18, 1988. A fundamental concept in the law of contracts is that there must be both an offer and an acceptance to create a binding contract. *Joseph Heiting & Sons v. Jacks Bean Co.*, 236 Neb. 765, 463 N.W.2d 817 (1990). Since there was no acceptance of the counteroffer made by Logan, there is no legally enforceable contract.

Logan argues that FCB did not comply with the Act in rejecting its offer. Logan never asserted in its second amended petition that FCB failed to comply with the Act and it is not necessary to address this issue in resolving this case.

In Logan's second assignment of error, it alleges that the district court erred in finding that the offer was not submitted by the "previous owner," Logan. The offer was submitted by Gerald Karg, Victor Karg, and Albert Karg, the three partners of Logan. There was no indication on the face of the purchase agreement that the offer was submitted on behalf of the partnership.

Having concluded that the counteroffer, whether made by the partnership or the individual partners, was a rejection of the offer made by FCB, we find there was no contract, was no right of specific performance on the part of Logan, and is no necessity for this court to discuss this assignment of error.

Logan's third assignment of error alleges that the court erred in interpreting the Act to excuse FCB from giving Logan notice of the right of first refusal to lease the property because it filed this lawsuit. In that connection, Logan had prayed regarding its second cause of action that it have judgment against FCB in an amount equal to the lost economic benefits Logan sustained as the result of the failure to notify Logan of its right to lease said property.

FCB had entered into a purchase agreement with the Welshes to sell the real estate in question. The purchase agreement was subject to Logan's right of first refusal. When Logan's offer was rejected, the parties began to finalize the transaction. This lawsuit was filed, thereby clouding the title. The purchase was not completed because of this lawsuit; therefore, FCB leased the land to the intended purchasers. FCB at all times intended

to sell the property, not to lease the property. FCB was forced to lease the property, since the property could not be sold.

The Act requires FCB to send a notice of the right of first refusal to the previous owner when FCB decides to lease acquired real estate. 12 U.S.C. § 2219a(c). FCB did not send such a notice or provide Logan with the right of first refusal to lease the real estate.

This claim may be disposed of quite simply as a matter of law. In *Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181 (8th Cir. 1990), the court, sitting en banc, held that the Agricultural Credit Act did not create an implied right of action on behalf of farmer borrowers. In so deciding the U.S. Court of Appeals for the Eighth Circuit joined the U.S. Courts of Appeals for the Ninth and Tenth Circuits, which had previously held that the Act does not imply a private right of action. See, *Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172 (9th Cir. 1989), *cert. denied* 493 U.S. 1057, 110 S. Ct. 867, 107 L. Ed. 2d 951 (1990); *Griffin v. Federal Land Bank of Wichita*, 902 F.2d 22 (10th Cir. 1990).

The background facts in *Zajac* are to be found in the dissenting opinion of Senior Circuit Judge Heaney.

> In 1980, the Zajacs borrowed $250,000 from the Bank. By 1986, they were unable to continue making payments, and the Bank commenced foreclosure proceedings in state court. The Zajacs raised a number of defenses to the action. On December 19, 1987, the state court issued a decision in favor of the Bank.
>
> The Bank delayed entry of its state court foreclosure judgment to afford the Zajacs an opportunity to restructure their loan under sections 102 and 106 of the Agricultural Credit Act of 1987, 12 U.S.C. §§ 2202 and 2202a.
>
> The Zajacs submitted an application for restructuring, which was considered but denied by the Bank on April 15, 1988 . . . . Judgment of foreclosure was entered by the state court on May 6, 1988.
>
> The Zajacs appealed the judgment of foreclosure to the Minnesota Supreme Court and moved for a stay of judgment. The motion was denied, and the trial court was

affirmed.

At that point, the Zajacs asked the United States District Court to enjoin the Bank from conducting a sheriff's sale on their land until the Bank had complied with certain borrowers' rights provisions of the Act, including the provision mandating an independent appraisal. The district court denied the Zajacs' motion after hearing. It held that there is no express or implied private right of action for failure to comply with the borrowers' rights provisions of the Act, that the Act did not require an independent appraisal of the Zajacs' land, that the Bank's decision to deny restructuring was a commercial banking decision, and that the relief requested would violate the Federal Anti-Injunction Act, 22 U.S.C. § 2283.

909 F.2d at 1184-85 (Heaney, J., dissenting).

The majority opinion, relying on *Harper* and *Griffin* (the former leaning heavily on *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)), concluded: " 'Congress intended administrative review to be the exclusive remedy' for violations of the Act." 909 F.2d at 1183. The majority also concluded:

Having carefully considered all of the Zajacs' arguments, we agree "the Ninth Circuit's analysis in *Harper v. Federal Land Bank of Spokane* is correct." *Griffin*, 902 F.2d at 24. We thus join the Ninth and Tenth Circuits in holding there is no implied private right of action available to enforce the Act, and affirm the district court.

909 F.2d at 1183.

In *Euerle Farms v. Farm Credit Services of St. Paul*, 928 F.2d 274 (8th Cir. 1991), the court rejected the plaintiffs' contention that its holding in *Zajac* was limited, stating:

Appellants, a large group of individual and corporate farmers, appeal from the district court's dismissal of their suit to force appellees to comply with the Agricultural Credit Act of 1987, 12 U.S.C. §§ 2001 to 2279aa-14 (1988).

In *Zajac v. Federal Land Bank*, 990 F.2d 1181, 1182-83 (8th Cir.1990) (en banc), this court held the Act does not

create a private cause of action. We now reject the appellants' argument that *Zajac* is limited to section 2202a of the Act. We see no reason to treat individual sections of the Act differently. Because the appellants' federal claims were dismissed, the district court also properly dismissed the pendent state-law claims.

928 F.2d at 276.

Although the trial court sustained FCB's motion for summary judgment on other grounds, we find that it should be sustained because the Act creates no private cause of action. If the trial court arrives at the correct result even though it uses a reason different from that expressed by this court, its judgment will still be upheld. See *Staman v. Yeager & Yeager, ante* p. 133, 469 N.W.2d 532 (1991).

FCB's cross-appeal asserts that the district court should have concluded as a matter of law that Parish, the secretary for Logan, had actual or apparent authority to pick up certified mail and direct it to the partnership and to sign the return receipt. In view of our disposition of Logan's appeal, it is unnecessary for us to consider the cross-appeal.

The judgment of the district court is affirmed.

AFFIRMED.

SHANAHAN, J., not participating.