**In re George Michael ZEITLER, Debtor.**

**Barbara MARTEL, Plaintiff,**

v.

**George Michael ZEITLER, Defendant.**

**Bankruptcy No. 96–00532–5–ATS.**
**Adversary No. S–96–00064–5–AP.**

United States Bankruptcy Court,
E.D. North Carolina.

Sept. 22, 1997.

---

**3.** The going rate for experienced bankruptcy practitioners in Vermont is $125 per hour.

Leslie Ruth Sharp, Raleigh, NC, for Plaintiff.

Michael Ryan Dyson, Layton, Dyson & Carraway, P.A., Raleigh, NC, for Debtor/Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

A. THOMAS SMALL, Chief Judge.

The matters before the court in this adversary proceeding to determine the dischargeability of a debt are the cross motions for summary judgment filed by the plaintiff, Barbara Martel, and the chapter 7 debtor/defendant, George Michael Zeitler. A hearing was held in Raleigh, North Carolina on July 23, 1997.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

The issue in this adversary proceeding is the dischargeability of a debt arising from a portion of Mr. Zeitler's IBM employee pension payments that was awarded to his ex-wife, Ms. Martel, in an Arizona state court marriage dissolution decree ("dissolution decree") entered on December 5, 1983.

Mr. Zeitler and Ms. Martel were married on August 8, 1958, and remained married for approximately 24 years (299 months) until December 5, 1983. Throughout their marriage, Mr. Zeitler accrued retirement benefits while working for IBM, and pursuant to the dissolution decree, Mr. Zeitler was required to pay Ms. Martel a portion of his retirement benefits. Paragraph 10 of the Arizona court's dissolution decree states:

> As to Respondent's retirement benefits at IBM, Petitioner shall be entitled to a percentage arrived at by dividing Two Hundred Ninety–Nine (299) by the number of months Respondent has worked for IBM at the time of retirement and such amount shall be due and payable at the time Respondent begins receiving retirement or disability benefits.

*Zeitler v. Zeitler,* No. D 38571 (Ariz.Super.Ct. Dec. 5, 1983) (order granting dissolution of marriage).

Mr. Zeitler retired on June 30, 1993, and began receiving monthly pension payments of $2,410.56 on July 1, 1993. However, Mr. Zeitler did not notify Ms. Martel of his retirement and kept her portion of the monthly retirement payments.

On July 9, 1994, Ms. Martel learned of Mr. Zeitler's retirement and contacted the plan administrator for IBM, the Wyatt Company. She was informed that the dissolution decree did not meet the Employee Retirement Income Security Act ("ERISA") requirements for a Qualified Domestic Relations Order ("QDRO") and that without a valid QDRO, Wyatt had no obligation to pay a portion of the benefits to her. At the same time, Ms. Martel began proceedings in state court to have Mr. Zeitler held in contempt of court for his failure to comply with the dissolution decree, and negotiations ensued. In October of 1995, Ms. Martel filed an amended motion for contempt, but the hearing was continued by mutual consent until April 4, 1996. The state court action, however, was stayed on March 29, 1996, when Mr. Zeitler filed his chapter 7 bankruptcy petition.

Mr. Zeitler claimed all of his IBM pension benefits as exempt, and no objection to the exemptions was filed. He also listed two disputed claims of Ms. Martel: (1) an $18,000 prepetition claim for her portion of the pension payments that he received but did not give to her and (2) an unliquidated claim for her portion of the postpetition benefits.

Ms. Martel filed this adversary proceeding claiming that all of Mr. Zeitler's debts to her should be nondischargeable, and both Ms. Martel and Mr. Zeitler filed motions for summary judgment.

Ms. Martel maintains that her portion of the prepetition retirement payments is her separate property, that her portion of the retirement benefits never became property of the debtor's estate, and that her portion of the retirement benefits is not subject to discharge.

In determining the dischargeability of these debts, it is helpful to divide Ms. Martel's claims into three categories: (1) Ms. Martel's claim for approximately $18,000, representing her portion of the prepetition retirement payments that Mr. Zeitler received but did not pay to her, (2) her claim for her portion of the postpetition retirement payments that the debtor received but did not pay to her, and (3) her claim for her portion of the payments that will become due each month in the future.

■■■ The court disagrees with Ms. Martel that her portion of the prepetition payments constitute her separate property that never became part of the debtor's bankruptcy estate. Undoubtedly, the dissolution decree gave Ms. Martel rights with respect to the retirement benefits, but she never took the steps necessary to elevate those rights to a separate property interest. ERISA qualified pension plans are not assignable, but former spouses with rights involving the retirement benefits may obtain a property right in a portion of the retirement benefits by satisfying the requirements for a QDRO. 29 U.S.C. § 1056(d)(1). Those procedures, although not in existence at the time of the dissolution decree, became available to the debtor in 1984 prior to Mr. Zeitler's retirement. Ms. Martel did not obtain a QDRO and relied instead on Mr. Zeitler to pay her

share of the benefits. When Mr. Zeitler received the retirement payments, he owed Ms. Martel her portion and, to that extent, she became his creditor. After Mr. Zeitler filed for chapter 7 relief, Ms. Martel became the holder of an unsecured claim against the bankruptcy estate for her portion of the retirement benefits that Mr. Zeitler received but did not pay to her. Furthermore, those obligations represent the debtor's prepetition debts that are dischargeable under 11 U.S.C. § 727(b) unless excepted from discharge pursuant to 11 U.S.C. § 523(a).

■■■ The debtor contends that all of Ms. Martel's share of the retirement benefits, including all payments that came due postpetition and that will come due in the future, are dischargeable. Mr. Zeitler maintains that Ms. Martel's right to her entire portion of the retirement benefits arose prepetition when he retired and that, because those benefits were not protected by a QDRO when the petition was filed, the entire debt is discharged.

It is true that the Bankruptcy Code's broad definition of a debt includes future obligations. A debt is defined in 11 U.S.C. § 101(12) as "liability on a claim," and a claim is defined in 11 U.S.C. § 101(5)(A) as a

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

Notwithstanding the expansive language of § 101(12) and § 101(5)(A), Ms. Martel's entitlement to the retirement proceeds did not arise until the retirement benefits were paid each month to Mr. Zeitler. Paragraph 10 of the dissolution decree is somewhat ambiguous. Mr. Zeitler focuses on the "due and payable" language in paragraph 10 and argues that Ms. Martel has a prepetition claim to the payments that became due and payable on the date that he retired. He contends that the language in the dissolution decree should be interpreted to mean that upon his retirement he was required to pay Ms. Martel one lump sum equal to her entire entitlement. The court does not accept that interpretation. Mr. Zeitler did not receive

the retirement payments in one lump sum. Rather, the pension plan provided him with monthly payments of a certain amount based upon the number of years that he worked for IBM. The only logical and fair interpretation of the language of the decree is that Mr. Zeitler was required to pay Ms. Martel a percentage of each monthly payment as it was received.

Consequently, the payments that came due postpetition are not dischargeable under § 727(b) since that section only provides for the discharge of prepetition debts. Furthermore, payments that will come due in the future are not dischargeable, and Ms. Martel is free to elevate her rights in the retirement benefits to a property interest by qualifying for a QDRO. As the bankruptcy court for the Western District of Missouri has stated

> Although [Ms. Martel] has no recognizable legal right under ERISA to [Mr. Zeitler's] pension benefits because she was unable to obtain the QDRO prepetition, she has an equitable interest in debtor's pensions arising from entry of the decree of dissolution. That equitable interest is the right to obtain a QDRO arising from the pre-bankruptcy division of the pensions by the dissolution decree. [Ms. Martel's] right to obtain a QDRO is not dischargeable in bankruptcy.

*Long v. Donahue (In re Long)*, 148 B.R. 904, 907 (Bankr.W.D.Mo.1992); *see also Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815 (9th Cir. 1997) ("Even if [the debtor's ex-wife] did not have a QDRO at the time [the debtor] filed for bankruptcy, his bankruptcy cannot eliminate her right to obtain a QDRO.").

■ The court is also not persuaded by Mr. Zeitler's argument that he claimed the entire retirement benefits as exempt and that the claimed exemptions must be allowed because no objections were filed. As a general rule, exemptions are allowed where objections are not filed timely, *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), but a debtor may not defeat another's interest in property merely by claiming the property as exempt.

To summarize, (1) Ms. Martel's claim for approximately $18,000, representing her por-tion of the prepetition retirement payments that Mr. Zeitler received but did not pay to her, is dischargeable unless excepted from discharge under 11 U.S.C. § 523(a), (2) Ms. Martel's claim for her portion of the postpetition retirement payments that the debtor received but did not pay to her is not discharged, and (3) Ms. Martel's claim for her portion of the payments that will become due each month in the future is not discharged.

Ms. Martel argues that if her portion of the prepetition retirement payments that Mr. Zeitler received but did not pay to her is dischargeable, her prepetition debt is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(5), and 523(a)(15), and she is entitled to summary judgment on those issues. However, summary judgment may not be granted in this proceeding with respect to dischargeability under § 523(a)(2)(A), § 523(a)(5) and § 523(a)(15) because there exist genuine issues of fact that must be determined at trial. Summary judgment may be granted with respect to dischargeability under § 523(a)(4), but not in favor of Ms. Martel.

■ 11 U.S.C. § 523(a)(4) excepts from discharge debts incurred by "fraud or defalcation while acting in a fiduciary capacity." According to Ms. Martel, Mr. Zeitler owed her fiduciary duties because he was holding her portion of the prepetition pension payments in constructive trust for her benefit. Therefore, when Mr. Zeitler allegedly mislead Ms. Martel concerning the date of his retirement, he committed fraud or defalcation while acting as a fiduciary. The court disagrees that the debt would be nondischargeable under § 523(a)(4).

> [T]he term "fiduciary" as used in § 523(a)(4) is restricted to "the class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners."

*Harmon v. Scott (In re Scott)*, 203 B.R. 590, 596–597 (Bankr.E.D.Va.1996) (quoting *Sager v. Lewis (In re Lewis)*, 94 B.R. 406, 410

(Bankr.E.D.Va.1988)). Constructive trusts do not give rise to the fiduciary duty required in 11 U.S.C. § 523(a)(4).

"Fiduciary capacity" as used in section 523(a)(4) has consistently been construed as describing something created under an express trust, as opposed to a trust created *ex maleficio,* constructively imposed because of the act of wrongdoing from which the debt arises.

*Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1398 (9th Cir.1985) (citations omitted). Ms. Martel's prepetition claim is not nondischargeable under 11 U.S.C. § 523(a)(4), and Mr. Zeitler is entitled to summary judgment on this issue.

Summary judgment is properly granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; FED. R. BANKR. P. 7056.

For the reasons stated above, partial summary judgment is **GRANTED** in favor of Ms. Martel with respect to her claim that her portion of the postpetition retirement payments that the debtor received but did not pay to her is not discharged, and with respect to her claim that her portion of the payments that will become due each month in the future is not discharged. Partial summary judgment is also granted in favor of Mr. Zeitler with respect to Ms. Martel's contention that her portion of the prepetition retirement payments that Mr. Zeitler received but did not pay to her is not dischargeable under § 727(b) and her contention that her prepetition claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The issues of nondischargeability of the prepetition debts under § 523(a)(2)(A), § 523(a)(5), and § 523(a)(15) are left for trial.

**SO ORDERED.**